UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

COLBIE T. [1],                              )
                                            )
                    Plaintiff,              )
                                            )
        v.                                  )        No. 2:21-cv-00122-DLP-JMS
                                            )
KILOLO KIJAKAZI,                            )
                                            )
                    Defendant.              )

<u>**ORDER**</u>

Plaintiff Colbie T. requests judicial review of the denial by the Commissioner

of the Social Security Administration ("Commissioner") of his application for

Supplemental Security Income ("SSI") under Title XVI of the Social Security Act

("the Act").  *See* 42 U.S.C. §§ 405(g), 423(d).  For the reasons set forth below, the

Court hereby **REVERSES** the ALJ's decision denying the Plaintiff benefits and

**REMANDS** this matter for further consideration.

## I.   PROCEDURAL HISTORY

On June 4, 2019, Colbie's mother filed an application for SSI on his behalf, as

Colbie was a minor at that time.[2]  (Dkt. 14-3 at 14, R. 104).  Colbie alleged disability

based on attention deficit hyperactivity disorder, reading below grade level,

---

[1] In an effort to protect the privacy interests of claimants for Social Security benefits, the Southern District of Indiana has adopted the recommendations put forth by the Court Administration and Case Management Committee of the Administrative Office of the United States Courts regarding the practice of using only the first name and last initial of any non-government parties in Social Security opinions.  The Undersigned has elected to implement that practice in this Order.  While Colbie was a minor when he filed his application, he has since turned 18; accordingly, Federal Rule of Civil Procedure 5.2(a) no longer applies, and it is not necessary to refer to Colbie by initials only.
[2] Colbie turned eighteen shortly after the ALJ issued her decision. (Dkt. 14-2 at 20, R. 19).

inability to learn at public schools, expulsion from home school program, and scoliosis. (Dkt. 14-3 at 2, R. 92). The Social Security Administration ("SSA") denied Colbie's claim initially on August 28, 2019, (Dkt. 14-3 at 2-14, R. 92-104), and on reconsideration on January 15, 2020. (Dkt. 14-3 at 15-31, R. 105-21).

Colbie filed a written request for a hearing, and on August 24, 2020, a hearing was held before Administrative Law Judge ("ALJ") Colleen Mamelka, at which Colbie, his mother, and vocational expert Heather Benton testified. (Dkt. 14-2 at 48-79, R. 47-78; Dkt. 14-4 at 26, R. 146). On September 29, 2020, ALJ Mamelka issued an unfavorable decision finding that Colbie was not disabled. (Dkt. 14-2 at 20-41, R. 19-40). The Appeals Council denied Colbie's request for review on January 6, 2021, making the ALJ's decision final and appealable. (Dkt. 14-2 at 2-4, R. at 1-3). Colbie now seeks judicial review of the ALJ's decision denying benefits pursuant to 42 U.S.C. §1383(c)(3).

## II.   STANDARD OF REVIEW

"Social security disability benefits are designed for disabled workers, but low-income parents or guardians may obtain them on behalf of disabled children as well." *Keys v. Barnhart*, 347 F.3d 990, 991 (7th Cir. 2003). For a child to be considered disabled, it must be shown that the child "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

2

"[S]ince disabled children generally do not have a work history, the structure of the disability program for them is necessarily different from that for adults, except in cases in which the child has a 'listed impairment,' that is, an impairment that would entitle the adult to disability benefits without any further inquiry into his ability to perform his past work or some other work; the child is treated the same in such a case." *Keys*, 347 F.3d at 991-92 (citing 20 C.F.R. § 416.924(d)).  If the child is "not so seriously disabled as is implied by being found to have a listed impairment, then it must be determined whether [the child] is nevertheless severely limited in functioning in specified areas of life activity such as concentration and communication." *Keys*, 347 F.3d at 992.

To determine whether the child is disabled, the ALJ considers all relevant evidence and the combined effect of any impairments on the child's overall health and functioning.  20 C.F.R. § 416.924(a).  The regulations set forth a three-step process for evaluating child disability claims.  20 C.F.R. § 416.924(a).

At Step One, if the child is doing substantial gainful activity, as defined by the regulations, the child is not disabled and the evaluation stops.  20 C.F.R. § 416.924(a)-(b).  If the child is not doing substantial gainful activity, the evaluation proceeds to Step Two.  20 C.F.R. § 416.924(a).

At Step Two, the ALJ considers the child's physical or mental impairments to see if the child has an impairment or combination of impairments that is severe.  20 C.F.R. § 416.924(a).  If the impairment or impairments are not severe, the child is not disabled and the evaluation stops.  20 C.F.R. § 416.924(a).  If the impairment or

impairments are severe, the evaluation proceeds to Step Three. 20 C.F.R. §
416.924(a).

At Step Three, the ALJ considers whether the child has an impairment that
meets, medically equals, or functionally equals a listing. 20 C.F.R. § 416.924(a). If
the child has such an impairment and it meets the duration requirement,
the child is disabled. 20 C.F.R. § 416.924(a). If the child does not have such an
impairment, or if it does not meet the duration requirement, the child is
not disabled. 20 C.F.R. § 416.924(a).

Judicial review of the Commissioner's denial of benefits is to determine
whether it was supported by substantial evidence or is the result of an error of
law. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). This review is
limited to determining whether the ALJ's decision adequately discusses the issues
and is based on substantial evidence. Substantial evidence "means—and means
only—such relevant evidence as a reasonable mind might accept as adequate to
support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *Rice v.
Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). The standard demands more than a
scintilla of evidentiary support, but does not demand a preponderance of the
evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). Thus, the issue
before the Court is not whether Colbie is disabled, but, rather, whether the ALJ's
findings were supported by substantial evidence. *Diaz v. Chater*, 55 F.3d 300, 306
(7th Cir. 1995).

Under this administrative law substantial evidence standard, the Court reviews the ALJ's decision to determine if there is a logical and accurate bridge between the evidence and the conclusion. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). In this substantial evidence determination, the Court must consider the entire administrative record but not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Nevertheless, the Court must conduct a critical review of the evidence before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

When an ALJ denies benefits, she must build an "accurate and logical bridge from the evidence to [her] conclusion," *Clifford*, 227 F.3d at 872, articulating a minimal, but legitimate, justification for the decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford*, 227 F.3d at 872.

### III.   BACKGROUND

#### A. Factual Background

Colbie was sixteen years old when an application for SSI benefits was filed on his behalf, alleging disability due to attention deficit hyperactivity disorder, reading below grade level, inability to learn at public schools, expulsion from home school program, and scoliosis that began August 1, 2005.  (Dkt. 14-3 at 2, R. 30).  At the time of his disability hearing, Colbie was seventeen years old and in the ninth grade, even though he should have been a junior in high school.  (Dkt. 14-2 at 54, R. 53).

#### B. ALJ Decision

In determining whether Colbie qualified for benefits under the Act, the ALJ employed the three-step sequential evaluation process set forth in 20 C.F.R. § 416.924 and concluded that Colbie was not disabled.  At Step One, the ALJ found that Colbie had not engaged in substantial gainful activity since the application date. (Dkt. 14-2 at 25, R. 24).

At Step Two, the ALJ found that Colbie has the following severe medically determinable impairments:  borderline intellectual functioning, depression, anxiety, Attention Deficit-Hyperactivity Disorder (ADHD), lumbar radiculopathy, and bilateral dysmorphic changes of the knees.  (Id.).

At Step Three, the ALJ found that Colbie did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments in the Listings.  (Dkt. 14-2 at 26, R. 25).  In reaching this

6

determination, the ALJ stated that she "considered all of the medical listings and determined that the claimant does not meet the necessary criteria for disability under Listings 101.02, 101.04, 105.08, 112.04, 112.05, 112.06, 112.11, or any other listing." (Id.). The ALJ further determined that Colbie did not have an impairment or combination of impairments that functionally equaled the severity of a listed impairment. (Dkt. 14-2 at 26-35, R. 25-34).

Here, the ALJ concluded that Colbie had a marked limitation in acquiring and using information; less than marked limitations in attending and completing tasks, interacting and relating with others, ability to care for himself, and health and physical well-being; and no limitation in moving about and manipulating objects. (Id.). The ALJ thus concluded that Colbie was not disabled. (Dkt. 14-2 at 35, R. 34).

## IV.   ANALYSIS

Colbie asserts numerous reasons why this matter should be remanded. (Dkt. 16 at 1-2). Broadly speaking, Plaintiff's assertions encompass three arguments: (1) the ALJ improperly cherry-picked evidence, thus failing to build an accurate and logical bridge between the evidence and her conclusion; (2) the ALJ erred in assessing Plaintiff's claims under the child standard; and (3) the ALJ erred in assessing Plaintiff's claims under the adult standard. Each of these arguments is addressed, as necessary, below.

## A. ALJ's Purported Determination Under the Adult Standard

As noted above, Colbie was seventeen years old at the time of the ALJ's decision, and therefore was subject to the standards applicable to a child's application for SSI.  In her decision, the ALJ noted that Colbie would be "age 18 within a few weeks from the date of this decision," and then stated the following:

> Therefore, in accordance with 20 CFR 416.924(f), the specific issues are whether the claimant was disabled under section 1614(a)(3)(C) of the Social Security Act for the period before age 18 and whether the claimant is disabled under section 1614(a)(3)(A) of the Social Security Act beginning at age 18.

(Dkt. 14-2 at 20, R. 19).  The ALJ then performed separate analyses under the child standard and the adult standard.  (Dkt. 14-2 at 25-41, R. 24-40).

Colbie points to errors in both of the ALJ's determinations.  However, the Court declines to consider the ALJ's determination under the adult standard, as it was not appropriate for the ALJ to make that determination.  The regulation she cites, 20 C.F.R. § 416.924(f), reads as follows:

> If you attain age 18 after you file your disability application but before we make a determination or decision.  For the period during which you are under age 18, we will use the rules in this section.  For the period starting with the day you attain age 18, we will use the disability rules we use for adults who file new claims, in § 416.920.

In this case, because Colbie had not attained age 18 by the time the ALJ made her determination, there was no basis for the ALJ to address his application under the adult standard.

The Commissioner agrees with this conclusion.  Rather than addressing Colbie's arguments relating to the ALJ's determination under the adult standard, the Commissioner states that "[a]ny error in the ALJ's analysis of Plaintiff's functioning as an adult is harmless because the ALJ's decision did not apply to any period when Plaintiff was an adult.  The period relevant to the ALJ's decision ended the day that decision issued—September 29, 2020." (Dkt. 17 at 26).  The Commissioner continues:

> The ALJ's analysis of whether Plaintiff was disabled under the standards for adults, (Dkt 14-2 at p. 35-41, R. 34-40), was thus unnecessary.  The ALJ explained that Plaintiff would turn 18 a few weeks after the decision issued and cited [sic] 20 C.F.R. § 416.924(f). (Dkt. 14-2 at 20, R. 19).  That regulation applies if an individual turns 18 after applying for disability benefits, but before the ALJ makes a decision. 20 C.F.R. § 416.924(f).  Because Plaintiff did not turn 18 before the ALJ issued her decision, that regulation does not apply.  As a result, the ALJ's analysis of whether Plaintiff would be disabled under the adult standards is akin to dicta, and any error in that analysis found harmless.

(Dkt. 17 at 26).  Given this unequivocal position taken by the Commissioner, and to alleviate Colbie's concerns that the ALJ's findings relating to the adult standard could have *res judicata* effect if Colbie does apply for benefits as an adult, (Dkt. 18 at 14-15), the Court hereby modifies the ALJ's decision and **VACATES** the portion of the ALJ's decision that relates to the adult standard in its entirety.  *See* 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the

Commissioner of Social Security, with or without remanding the cause for a rehearing.").

## B. ALJ's Determination Under the Child Standard

With regard to the ALJ's decision relating to Colbie's disability prior to turning eighteen, Colbie asserts that this matter should be remanded for the following reasons:

> 1) [the] Decision is premised on cherry-picked evidence and failed to provide an accurate and logical bridge to support the critical findings and conclusions; and (2) [the] ALJ erred in assessing Plaintiff's claims prior to turning age 18 given that (a) the State Agency opinions were outdated and incomplete and cannot salvage the Decision, (b) the ALJ erred in considering whether Plaintiff's conditions met or medically equaled a listed impairment, (c) the ALJ erred in assessing whether Plaintiff's conditions alternatively functionally equaled a listed impairment, and (d) the ultimate Decision is unsupported in light of these errors.

(Dkt. 16 at 2).  The Court will address Colbie's arguments below.

### 1. Subjective Symptom Evaluation

Colbie argues that there are "two critical defects" in the ALJ's decision:  that the ALJ "cherry-picked evidence, highlighting normal findings or evidence of normal functioning, and overlooking objective abnormalities or difficulties in functioning," and that the ALJ "failed to provide an accurate and logical bridge from the evidence to her conclusion."  (Dkt. 16 at 10). Colbie then argues that "[t]hese errors are best reflected in the ALJ's improper subjective symptom analysis."  The Court agrees that the ALJ failed to adequately explain and support her subjective symptom evaluation.

In arriving at her determination of non-disability, the ALJ evaluated Colbie's subjective symptoms pursuant to 20 C.F.R. § 416.929 and SSR 16-3p. (Dkt. 14-2 at 26, R. 25). "In evaluating a claimant's credibility, the ALJ must comply with SSR 16-3p and articulate the reasons for the credibility determination." *Karen A. R. v. Saul*, No. 1:18-cv-2024-DLP-SEB, 2019 WL 3369283, at *5 (S.D. Ind. July 26, 2019). As the ALJ recognized in her decision, SSR 16-3p describes a two-step process for evaluating a claimant's subjective symptoms.[3] First, the ALJ must determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms. SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017). Second, the ALJ must evaluate the intensity and persistence of a claimant's symptoms and determine the extent to which they limit the child-claimant's "ability to function independently, appropriately, and effectively in an age-appropriate manner." *Id.* at *3-4.

A court will overturn an ALJ's evaluation of a claimant's subjective symptom allegations only if it is "patently wrong." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (internal quotation marks and citation omitted). To satisfy this standard, the ALJ must justify her subjective symptom evaluation with "specific reasons supported by the record," *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir.

---

[3] SSR 16-3p became effective on March 28, 2016, (S.S.A. Oct. 25, 2017), 2017 WL 5180304, at *13, replacing SSR 96-7p, and requires an ALJ to assess a claimant's subjective symptoms rather than assessing his "credibility." By eliminating the term "credibility," the SSA makes clear that the "subjective symptom evaluation is not an examination of an individual's character." *See* SSR 16-3p, 2016 WL 1119029 at *1. The Seventh Circuit has explained that the "change in wording is meant to clarify that administrative law judges are not in the business of impeaching a claimant's character." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016).

2013), and build an "accurate and logical bridge between the evidence and conclusion." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).  An ALJ's evaluation is "patently wrong" and subject to remand when the ALJ's finding lacks any explanation or support.  *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014); *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008); *Cassandra S. v. Berryhill*, No. 18-00328, 2019 WL 1055097, at *5 (S.D. Ind. Mar. 6, 2019).

At step two of the Rule 16-3 analysis, the ALJ considers the claimant's subjective symptom allegations in light of the claimant's daily activities; the location, duration, frequency, and intensity of pain and limiting effects of other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; treatment other than medication for relief of pain; and other measures taken to relieve pain.  20 C.F.R. § 404.1529(c)(3).  When assessing a claimant's subjective symptoms, ALJs are directed to

> consider the consistency of the individuals own statements.  To do so, [the ALJ] will compare statements an individual makes in connection with the individual's claim for disability benefits with any existing statements the individual made under other circumstances.

SSR 16-3p, at *8.  The ruling also explains that

> [p]ersistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent.

*Id.* at *9.

In this case, the ALJ determined that "the statements concerning the intensity, persistence and limiting effects of [Colbie's] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Dkt. 14-2 at 27, R. at 26). However, the ALJ's decision is almost entirely devoid of any explanation for this determination. Rather, the ALJ simply summarizes at length the medical and opinion evidence of record, as well as Colbie's mother's hearing testimony and written statements. But "[a] summary is not analysis, as it does not explain *why* the evidence summarized undermined Plaintiff's statements about his symptoms or limitations, or which statements were inconsistent." *Michael v. Saul*, No. 2:20cv238, 2021 WL 1811736, at *8 (N.D. Ind. May 6, 2021) (emphasis in original) (citing *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008)).

Indeed, the only portions of the decision that come close to explaining how the testimony and statements related to Colbie's subjective symptoms are inconsistent with other evidence of record read as follows:[4]

> Although the claimant's mother reported that the claimant has difficulty walking for long distances (which she described as through the grocery store) without extreme pain, the medical evidence of record does not contain findings consistent with the level of pain and limitation described by Ms. Talley. Treatment records routinely reflect normal range of motion, normal neurological findings, and normal sensation. More recently, the claimant did have some strength deficits and muscle imbalances, but no additional workup has been conducted. (Ex. 6E, 7E, 13E, 18E, 1F-22F, Hearing Transcript)

---

[4] Colbie states in his brief that "the ALJ relied on two primary justifications for finding Plaintiff less limited than alleged: (1) Dr. Guggali's records showed no 'significant abnormalities,' besides anxiety, and her exams were 'unremarkable' and (2) Plaintiff's symptoms improved with medication compliance." (Dkt. 16 at 10-11 (citing Dkt. 14-2 at p. 28-29, R. 27-28)). While these statements do appear in the ALJ's summary of the evidence, the ALJ does not point to them as reasons for her subjective symptom evaluation.

(Dkt. 14-2 at 33, R. at 32.)

> The claimant's mother reported that the claimant is socially isolative, but treatment records reflect that the claimant does have friends with whom he hangs out with. The claimant's mother also reported that the claimant is irritable and has anger outbursts; however, treatment records reflect that the claimant has been pleasant and cooperative. He does not generally make good eye contact. The record does indicate that the claimant does not like crowds of people, but also that he participates in group sports. The claimant does have very poor to poor receptive-expressive language skills, which would likely inhibit his ability to converse with others. (Ex. 6E, 7E, 13E, 18E, 1F-22F, Hearing Transcript)

(Dkt. 14-2 at 36, R. at 35.)

> The claimant's mother reported that the claimant cannot safely use an oven, or even a microwave to reheat food; there is also a notation within the record that he cannot make himself a bowl of cereal. The claimant is almost 18 years old and expresses no desire to obtain a driver's license and seems to be very dependent upon his mother for basic life necessities. However, the claimant's grooming and hygiene is typically within normal limits. The claimant's insight and judgement [sic] is often noted to be limited due to age. (Ex. 6E, 7E, 13E, 18E, 1F-22F, Hearing Transcript)

(Dkt. 14-2 at 37, R. at 36.)

To the extent that the ALJ intended for these statements to be considered as

her reasons for her subjective symptom evaluation—and, again, it is not clear that

she did—there are several problems with them. First, there is no evidence that

Colbie participates in group sports; it is entirely unclear where the ALJ gleaned this

from the record. The statement that Colbie has "friends with whom he hangs out

14

with [sic]," (Dkt. 14-2 at 36, R. at 35), also is not consistent with the record.[5]  As the ALJ acknowledges elsewhere in her decision, there is evidence that Colbie "appeared to have *no* friends with whom he hangs out with [sic]," (Dkt. 14-2 at 28, R. 27)[6] (emphasis added), and the treatment note cited by the ALJ in support of her statement that he does have such friends states that Colbie "said he is not doing things.  He said he enjoys things like hanging out with friends." (Dkt. 14-7 at 284, R. 622.)  The note from the following month's visit includes that "he said he is not social." (Dkt. 14-7 at 281, R. 619).[7]

Second, the fact that Colbie has been described by Dr. Guggali, his treating psychiatrist, as "pleasant and cooperative" during his visits does not call into question the veracity of his mother's report that Colbie was "irritable and ha[d] anger outbursts."  As Colbie points out in his brief, the Commissioner recognizes that a child's behavior can vary depending on the setting:

> 6. *Evidence of functioning in unfamiliar situations or supportive situations.*
>
> a. *Unfamiliar situations.* We recognize that evidence about your functioning in unfamiliar situations does not necessarily show how you would function on a sustained basis in a school or other age-appropriate setting.  In one-time, time-limited, or other

---

[5] Perhaps the ALJ was referring to the online friends that Colbie plays video games with.  If so, the existence of those friends does not contradict his mother's testimony; she testified at some length about his online friends.  (*See* Dkt. 14-2 at 59, 63-64).

[6] The ALJ cites to the report from P. Kevin Bolinskey, Ph.D., HSPP, who conducted an "ADHD and LD assessment" of Colbie on February 19, 2019.  (Dkt. 14-7 at 5, R. 343).  Dr. Bolinskey noted that Colbie "has no friends with whom he hangs out, but does interact with others when playing on his PS4.  [Colbie's mother] indicated that Colbie used to have friends, but all of these relationships ended." *Id.*

[7] The Court notes that the Commissioner acknowledges that the ALJ "made some misstatements of these facts." (Dkt. 17 at 24).

unfamiliar situations, you may function differently than you do in familiar situations. In unfamiliar situations, you may appear more, or less, limited than you do on a daily basis and over time.

b. *Supportive situations.* Your ability to function in settings that are highly structured, or that are less demanding or more supportive than settings in which children your age without impairments typically function, does not necessarily demonstrate your ability to function age-appropriately.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C)(6) (part of explanation of "What evidence do we need to evaluate your mental disorder?" in Listing 112.00).   The ALJ does not explain how the observations that Colbie was polite and cooperative during brief mental health appointments—which are certainly less familiar and more supportive settings than a typical situation—contradicted Colbie and his mother's testimony and reports regarding his behavior at home.  Cf. *Alexis G. v. Saul*, No. 1:20-cv-143, 2021 WL 870813, at *11 (N.D. Ind. Mar. 9, 2021) ("The ALJ did not explain how the observations of being polite, cooperative, and having good eye contact during brief medical appointments undermined the reports and opinions about Plaintiff's difficulties interacting with supervisors and coworkers in the context of a work setting.").

Nor does the fact that Colbie's "grooming and hygiene is typically within normal limits" at his medical visits, (Dkt. 14-2 at 34, 37, R. 33, 36), contradict any of the allegations regarding Colbie's subjective symptoms.  Colbie's mother made clear that Colbie was able to care for his personal needs with her assistance.  (*See* Dkt. 14-6 at 79, R. 278) (questionnaire response noting that Colbie "[h]as to be reminded to brush his teeth, change clothes.  I have to put out the clean clothes to wear if we

16

go somewhere.  Does shower & keep body clean.  Showers 2 to 3 times a week.").

Given that Colbie lived with his mother and was accompanied by her to his medical

appointments, she would have had the opportunity to provide the reminders and

assistance that he needed to present at the appointments with normal hygiene.

That does not contradict her assertions that Colbie is unable to do so without her

assistance.

That leaves only the ALJ's observation that "the medical evidence of record

does not contain findings consistent with the level of pain and limitation described

by" Colbie's mother with regard to Colbie's knee and back pain.  (Dkt. 14-2 at 33, R.

32).  However, "[a]n 'ALJ may not discredit a claimant's testimony about her pain

and limitations solely because there is no objective medical evidence supporting

it.'" *Akin v. Berryhill*, 887 F.3d 314, 318 (7th Cir. 2018) (quoting *Villano*, 556 F.3d at

562); *see also Hill v. Colvin*, 807 F.3d 862, 869 (7th Cir. 2015) (same); 20 C.F.R. §

404.1529 ("However, we will not reject your statements about the intensity and

persistence of your pain or other symptoms or about the effect your symptoms have

on your ability to work solely because the available objective medical evidence does

not substantiate your statements.").  Here, the ALJ provided no other properly

supported reason for finding that the allegations regarding Colbie's subjective

symptoms were not "not entirely consistent" with the other evidence of record.

Although the Court will defer to an ALJ's subjective symptom finding that is

not patently wrong, the ALJ must still adequately explain her subjective symptom

evaluation "by discussing specific reasons supported by the record."  *Pepper v.*

17

*Colvin*, 712 F.3d 351, 367 (7th Cir. 2013).  Without this discussion, the Court is unable to determine whether the ALJ reached her decision in a rational manner, logically based on her specific findings and the evidence in the record.  *Murphy*, 759 F.3d at 816 (internal quotations omitted); *see also* SSR 16-3p, at *9.  Here, as discussed above, the ALJ failed to fulfill her obligation to explain and support her subjective symptom evaluation.  Remand is required to correct this error.

### 2.  *Listing Issues*

As noted above, at Step Three, the ALJ was required to consider whether Colbie has an impairment that meets, medically equals, or functionally equals a listing.  20 C.F.R. § 416.924(a).  If he does, and it meets the duration requirement, a finding of disability is required.  20 C.F.R. § 416.924(a).  If he does not, or if it does not meet the duration requirement, he is not disabled.  20 C.F.R. § 416.924(a).  Colbie takes issue with the ALJ's findings that his impairment did not meet, medically, equal, or functionally equal any listing.

### a.  *Functional Equivalence*

Impairments "functionally equal" a listing if they are of "listing-level severity," meaning that they result in "marked"[8] limitations in two domains of functioning or an "extreme"[9] limitation in one domain.  20 C.F.R. § 416.926(a); 20

---

[8] A "marked" limitation exists when impairments "interfer[e] seriously with [the claimant's] ability to independently initiate, sustain, or complete activities," and are "more than moderate" but "less than extreme."  20 C.F.R. § 416.926a(e)(2)(i); *see* 20 C.F.R. § 416.925(b)(2)(ii); 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Pt. B.

[9] A claimant has an "extreme" limitation when impairments "interfer[e] very seriously with [his] ability to independently, initiate, sustain, or complete activities," and extreme limitations are "more

C.F.R. § Pt. 404, Subpt. P, App. 1, Pt. B; 20 C.F.R. § 416.926a(a). The six domains of functioning are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1); *Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 679 (7th Cir. 2010) (citing 20 C.F.R. § 416.926a); *see also Crystal M. on behalf of D.R.*, 2022 WL 1567061, at *1. The claimant bears the burden of proof at every step.

Colbie takes issue with the ALJ's analysis of each of these domains except moving about and manipulating objects and health and physical well-being. (Dkt. 16 at 23-27).

   i. Acquiring or Using Information

The ALJ found that Colbie had a marked limitation in acquiring and using information. (Dkt. 14-2 at 30-31, R. 29-30). After setting forth the applicable standards, the ALJ gave the following explanation for her finding:

> Early educational records reflect that the claimant has struggled in the academic setting since prior to Kindergarten, but that when engaged in speech and language services in preschool he had met his goals and was discharged accordingly (Ex. 1E, 2E, 9E). More recent educational records reflect failing grades in the 2017-2018 school year for the 8th grade (Ex. 3E). The claimant has a FSIQ of 70, which falls within the extremely low to very low range (Ex. 1F) Academic progress notes from March 2019 showed proficiency in only reading foundational skills and partial proficiency in measurement and data, but all other areas, he was non-proficient (Ex. 6F/12-14). A couple of weeks later, the claimant had improved in his mathematics and was partially proficient in fractions, base ten, operations and algebraic thinking, and geometry, but non-

---

than marked." 20 C.F.R. § 416.926a(e)(3)(i); *see* 20 C.F.R. § 416.925(b)(2)(ii); 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Pt. B.

> proficiency in measurement and data (Ex. 6F/19). In August 2019, the
> claimant attended a consultative speech and language assessment with
> Callie M. Ludwig, SLP. Assessment revealed severe receptive-
> expressive language deficits as indicated by very poor to poor scores in
> nearly all tested areas (Ex. 9F, 10F). (Ex. 6E, 7E, 13E, 18E, 1F-22F,
> Hearing Transcript)

(Dkt. 14-2 at 31, R. 30). As Colbie points out, "the ALJ *did not explain* how this

significant evidence supports only a marked, rather than an *extreme*, limitation in

this domain." (Dkt. 16 at 23) (emphasis in original). Further, the Court is not

confident that the ALJ would not have found an extreme limitation in this domain if

the ALJ had fully credited the statements of Colbie and his mother regarding his

abilities. Accordingly, on remand, the ALJ shall reevaluate her finding regarding

this domain in light of her reevaluation of her subjective symptom evaluation and

ensure that she considers all relevant evidence in doing so and that she explains the

basis for her finding.

    ii. <u>Attending and Completing Tasks</u>

    The ALJ found that Colbie had a less than marked limitation in attending

and completing tasks. (Dkt. 14-2 at 31-32, R. 30-31). After setting forth the

applicable standards, the ALJ gave the following explanation for her finding:

> The claimant was evaluated for ADHD in 2019, on the Connors
> Continuous Performance Test-3 the claimant's scores were indicative of
> attention deficit disorders, such as ADHD. The overall diagnostic
> impression was that the claimant met the diagnostic criteria for
> intellectual disorder and ADHD, predominantly inattentive type. (Ex.
> 1F) Treatment notes from his psychiatrists reflect some inattentiveness
> and partial attentiveness, but overall, the record does not reflect
> significant inattentive-type behaviors. (Ex. 6E, 7E, 13E, 18E, 1F-22F,
> Hearing Transcript)

(Dkt. 14-2 at 31-32, R. 30-31).[10]  In fact, Exhibit 7E, which is a form completed by

Colbie's mother, is replete with descriptions of "significant inattentive-type

behaviors."  *See* (Dkt. 14-6 at 78-80, R. 277-79) (Colbie has to be reminded to take

his medication; does not have household chores because he forgets to do them; has

to be reminded to brush his teeth and change his clothes; in a school setting, he

forgets how to do things even if it is explained to him).  In Exhibit 1F, it is noted

that on the Wechsler Intelligence Scale for Children-V, Colbie "evidenced significant

weakness on Digit Span, which measures attention/working memory." (Dkt. 14-7 at

8, R. 346).  It was noted that his test scores contained "strong indicators of

difficulties with inattentiveness and impulsivity, as well as some indicators of

difficulties with sustained attention." (Dkt. 14-7 at 9, R. 347).  In Exhibit 3F, Dr.

Guggali noted that Colbie's mother reported concerns related to inattention,

distractibility, and impulsivity, among other issues. (Dkt. 14-7 at 38, R. 376).  The

same record indicates that that there were "ADHD concerns" at home and at school,

that Colbie reported an inability to concentrate, and that the answers to all nine

questions relating to "inattention" were "yes."[11] (Dkt. 14-7 at 39-40, R. 377-78).  In

---

[10] The Court notes that the ALJ's general citation to all of Colbie's medical records (*i.e.*, Exhibits 1F-22F) is unhelpful.  Many of those records would not be expected to contain information about Colbie's attention deficits, as they relate to only physical issues. *See, e.g.*, Exhibits 4F, 5F, 6F, 8F, 11F, 12F, 14F, 15F, 16F, 17F, 18F, 19F, and 21F.  In addition, Exhibits 9F and 10F relate to a speech and language evaluation and also would not be expected to reflect attention issues.

[11] These questions were:  often fails to give attention to details or makes careless mistakes in schoolwork, work, or other activities; often has difficulty sustaining attention in tasks or play activities; often does not seem to listen when spoken to directly; often does not follow through on instructions and fails to finish schoolwork, chores, or duties in the Workplace; often has difficulty organizing tasks and activities; often avoids, dislikes, or is reluctant to engage in tasks that require

Exhibit 20F, Dr. Parvaz, a treating psychiatrist, noted in July 2020 that Colbie "reports he gets distracted easily.  He reports concentration is hard.  He reports he hears from one [ear] and out of next.  He said focus is hard online compared to in person but they both are hard.  He said listening is hard for him.  He loses track of things what they are saying.  He reports memory is hard. . . . He said Concerta [his ADHD medication] does not work and asking to try some other medicine and his mother agreed."  (Dkt. 14-7 at 281, R. 619).  Dr. Parvaz noted that Colbie's ADHD was "moderate to severe" and that his response to his ADHD medication was "poor." (Id.).

The Court agrees with Colbie that the ALJ's summary conclusion that "overall, the record does not reflect significant inattentive-type behaviors," without acknowledgement of the evidence in the record that does reflect Colbie's attention issues, is error.  This error is compounded by the ALJ's subjective symptom evaluation error discussed above, as Colbie and his mother testified and reported that he had significant difficulties with attention and focus.  On remand, the ALJ shall reevaluate her finding regarding this domain in light of her reevaluation of her subjective symptom evaluation and ensure that she considers all relevant evidence in doing so and that she explains the basis for her finding.

---

sustained mental effort; often loses things necessary for tasks or activities; is often easily distracted by extraneous stimuli; and is often forgetful in daily activities.  (Dkt. 14-7 at 39-40, R. 377-78).

iii.  <u>Interacting and Relating with Others</u>

The ALJ found that Colbie had a less than marked limitation in
interacting and relating with others. (Dkt. 14-2 at 32-33, R. 31-32).  After
setting forth the applicable standards, the ALJ gave the following
explanation for her finding:

> The claimant's mother reported that the claimant is socially isolative,
> but treatment records reflect that the claimant does have friends with
> whom he hangs out with [sic].  The claimant's mother also reported that
> the claimant is irritable and has anger outbursts; however, treatment
> records reflect that the claimant has been pleasant and cooperative.  He
> does not generally make good eye contact.  The record does indicate that
> the claimant does not like crowds of people, but also that he participates
> in group sports.  The claimant does have very poor to poor receptive-
> expressive language skills, which would likely inhibit his ability to
> converse with others. (Ex. 6E, 7E, 13E, 18E, 1F-22F, Hearing
> Transcript)

(Dkt. 14-2 at 32-33, R. 31-32).  As discussed previously, the ALJ's statements that
Colbie has friends he hangs out with and that he plays organized sports are
unsupported by the record.  The problem with the ALJ's reliance on the fact that
Colbie was pleasant and cooperative during his exams has also been discussed
above.  In light of these issues, the ALJ has failed to build a logical bridge between
the evidence of record and her finding regarding this domain.  This error must be
corrected on remand.  Again, the ALJ shall reevaluate her finding regarding this
domain in light of her reevaluation of her subjective symptom evaluation and
ensure that she accurately considers all relevant evidence in doing so and that she
explains the basis for her finding.

iv.  <u>Caring for Oneself</u>

Finally, the ALJ found that Colbie had a less than marked limitation in

caring for himself.  (Dkt. 14-2 at 33-34, R. 32-33).  After setting forth the applicable

standards, the ALJ gave the following explanation for her finding:

> The claimant's mother reported that the claimant cannot safely use an
> oven, or even a microwave to reheat food; there is also a notation within
> the record that he cannot make himself a bowl of cereal.  The claimant
> is almost 18 years old and expresses no desire to obtain a driver's license
> and seems to be very dependent upon his mother for basic life
> necessities.  However, the claimant's grooming and hygiene is typically
> within normal limits.  The claimant's insight and judgement [sic] is often
> noted to be limited due to age. (Ex. 6E, 7E, 13E, 18E, 1F-22F, Hearing
> Transcript)

(Dkt. 14-2 at 34, R. 33).  This is akin to no explanation at all.  As discussed above,

the fact that Colbie is able to demonstrate normal hygiene and grooming with his

mother's direct supervision is not evidence of his ability to care for himself in an

age-appropriate manner, and nothing else pointed to by the ALJ supports a finding

that Colbie has a less than marked limitation in this domain.  Once again, on

remand the ALJ shall reevaluate her finding regarding this domain in light of her

reevaluation of her subjective symptoms evaluation and ensure that she accurately

considers all relevant evidence in doing so and that she explains the basis for her

finding.

### b. *Analysis of Meeting or Equaling Each Listing*

A claimant's impairments will "meet" a listing when they satisfy all of the

criteria for a given listing.  20 C.F.R. § 416.925(d).  Impairments "medically equal" a

listing if they are "at least equal in severity and duration" to a listing's criteria,

meaning that a claimant's impairments "result in extreme limitation of one, or

marked limitation of two" of four areas of mental functioning.  20 C.F.R. §

416.926(a); 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Pt. B; *see also Crystal M. on behalf

of D.R. v. Kijakazi*, No. 21 CV 2240, 2022 WL 1567061, at *1 (N.D. Ill. May 18,

2022).  The four areas of mental functioning (also known as "Paragraph B criteria")

are:  (1) understand, remember, or apply information; (2) interact with others; (3)

concentrate, persist, or maintain pace; and (4) adapt or manage oneself.  20 C.F.R. §

Pt. 404, Subpt. P, App. 1, Pt. B.[12]

In this case, the ALJ's entire discussion of whether Colbie's impairments

meet or medically equal a listing under the child standards is as follows:

> Individually, or in combination, the medical evidence does not document impairments of listing level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually, or in combination. In making this determination, I considered all of the medical listings and determined that the claimant does not meet the necessary criteria for disability under Listings 101.02, 101.04, 105.08, 112.04, 112.05, 112.06, 112.11, or any other listing. Additionally, I considered whether the claimant's impairments, or combination of impairments, equals a listing, and have determined that the impairments, or combination of impairments, do not equal a listing.

(Dkt. 14-2 at 26, R. 25).  This analysis is wholly inadequate on its face.

---

[12] Colbie argues that the evidence shows that he has an extreme limitation in understanding, remembering, and applying information and at least a marked limitation in the remaining B criteria. (Dkt. 16 at 18-22).

"'In considering whether a claimant's condition meets or equals[13] a listed impairment, an ALJ must discuss the listing *by name* and offer more than a perfunctory analysis of the listing.'" *Wilder v. Kijakazi*, 22 F.4th 644, 652 (7th Cir. 2022) (footnote added) (emphasis in original) (quoting *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)).  Here, the ALJ offered no analysis at all.  The ALJ did offer some analysis of some of the listings in her discussion of the adult standards, but, for the reasons set forth above, that portion of the ALJ's decision has now been vacated.  In any event, given the substantial overlap between the Paragraph B criteria and the six domains of functioning and the almost identical explanations the ALJ gives for her findings regarding them, the analysis she provides under the adult standard suffers from the same defects as her discussion regarding functional equivalence.  *Cf.* (Dkt. 14-2 at 30-35, R. 29-34) (discussion of six domains under child standard) *with* (Dkt. 14-2 at 36-38, R. 35-37) (discussion of Paragraph B criteria under adult standard).

In addition, with regard to Listings 112.04 and 112.06, the listing may be met by satisfying the Paragraph C criteria instead of the Paragraph B criteria.  To satisfy the Paragraph C criteria, the impairment must be

---

[13] It appears that the Commissioner has relieved herself of the obligation to articulate a reason for finding that a claimant's impairments do not medically equal a Listing.  (Dkt. 17 at 18-26). *See* Social Security Ruling (SSR) 17-2p, 82 Fed. Reg. 15,263, 15,265 (Mar. 27, 2017) (an ALJ need not articulate specific evidence supporting a finding that a claimant's impairments do not medically equal a listed impairment; a simple statement of non-equivalence will suffice) (*cited in Deloney v. Saul*, 840 F. App'x 1, 4 (7th Cir. 2020)); *see also Wilder v. Kijakazi*, 22 F.4th 644, 652 (7th Cir. 2022) (recognizing SSR 17-2p).  The obligation still exists with regard to findings regarding whether an impairment meets a Listing, however.

26

"serious and persistent;" that is, [the claimant must] have a medically documented history of the existence of the disorder over a period of at least 2 years, and there [must be] evidence of both:

> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 112.00G2b);[14] *and*
>
> 2. Marginal adjustment, that is, [the claimant has] minimal capacity to adapt to changes in your environment or to demands that are not already part of [his] daily life (see 112.00G2c).

Listings 112.04 & 112.06, 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Pt. B (emphasis in original) (footnote added).  The ALJ found that Colbie did not satisfy the Paragraph C criteria because he "does not have two years of consistent mental health treatment." (Dkt. 14-2 at 37, R. 36).  However, Colbie began treatment with Dr. Guggali, a psychiatrist, in March 2018, and transferred to a new psychiatrist, Dr. Parvaz, in June 2020, after Dr. Guggali moved her practice.  (*See* Dkt. 14-7 at 38-43, 284-88, R. 376-81, 622-26; *see also* Dkt. 14-7 at 361, R. 699 (noting Dr. Guggali's move)).  If the ALJ believed his treatment with these psychiatrists did not constitute the type of consistent mental health treatment required to satisfy the Paragraph C criteria, she should have explained why.

On remand, the ALJ shall provide an analysis of each listing that she considers and explain her determination of whether Colbie's impairments meet that listing.  For each relevant listing relating to Colbie's psychological impairments, the

---

[14] Listing 112.00(G)(2)(b) provides: "We consider that you receive ongoing medical treatment when the medical evidence establishes that you obtain medical treatment with a frequency consistent with accepted medical practice for the type of treatment or evaluation required for your medical condition."

ALJ shall address both the Paragraph B criteria and, for those listings to which they are relevant, the Paragraph C criteria.[15]

### 3. *State Agency Opinions*

Finally, anticipating an argument from the Commissioner that the state agency opinions, which the ALJ found to be persuasive, constitute substantial evidence supporting the ALJ's decision, Colbie argues that "none of the ALJ's errors can be salvaged by the State Agency opinions as they were outdated and incomplete and, thus, entirely unsupported." (Dkt. 16 at 15). Much of this argument focuses on evidence that the state agency psychologists had in their record but did not mention as underlying their opinions. (Id. at 15-17). The Court disagrees with the premise that the fact that state agency psychologists did not mention certain evidence means that they did not "consider" that evidence. Colbie is essentially urging the Court to apply the articulation standard that governs ALJs to state agency consultants, but he cites to no authority that suggests it is appropriate to do so.

Colbie also argues that the records that the state agency psychologists had were outdated because they did not contain some of Colbie's more recent psychiatric treatment records. (Dkt. 16 at 17). "An ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v.*

---

[15] The Commissioner notes repeatedly in her brief that the state agency psychologists found that Colbie's impairments did not meet any listing and were not the functional equivalent of a listing. (*See generally* Dkt. 17 at 18-26). That fact does not relieve the ALJ from her duty to adequately explain her determinations and to ensure that those determinations are based on accurate consideration of all of the relevant facts of record.

*Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018), *as amended on reh'g* (Apr. 13, 2018).

Here, Colbie points to the following as new and significant evidence that the state

agency psychologists did not have:

> 1) exams showing poor eye contact, ectomorphic appearance,
> psychomotor slowing, blunted and constricted affect, slowed thought
> process, partial attentiveness, mild intellectual impairment, impaired
> abstraction, "fair" hygiene and grooming, and limited insight and
> judgment (Dkt. 14-7 at p. 281-88, R. 619-26); and, (2) the new diagnoses
> of conduct disorder and failure to thrive (Dkt. 14-7 at p. 338-42, R. 676-
> 80).

(Dkt. 16 at 17).  The Commissioner argues that Colbie has not demonstrated that

this is the type of "new and significant" evidence that required the ALJ to obtain

new state agency opinions.  (Dkt. 17 at 12-17).  However, the Court cannot say with

reasonable certainty that these records would not have changed the state agency

psychologists' opinions.  Accordingly, the ALJ may wish to take the opportunity

afforded by the remand to have Colbie's most recent evidence subjected to medical

review.

## V.   CONCLUSION

For the reasons detailed herein, this Court **REVERSES** the ALJ's decision

denying Plaintiff benefits and **REMANDS** this matter for further proceedings

pursuant to 42 U.S.C. § 405(g) (sentence four) as detailed above. Final judgment

will issue accordingly.

So ORDERED.

Date: 8/26/2022

Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

29

Distribution:

All ECF-registered counsel of record via email